Patricia Halstead, Esq.
Halstead Law Offices
615 S. Arlington Ave.
Reno, NV 89509
(775) 322-2244
Fax: (775) 465-4144
phalstead@halsteadlawoffices.com
Attorney for Carol Gauler, Personal Representative

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| CAROLE S. GAULER, PERSONAL REPRESENTATIVE OF THE ESTATE OF PAUL L. KLEIN, <br><br> Plaintiff, <br><br> vs. <br><br> INTERNAL REVENUE SERVICE, Department of the Treasury; DANIEL WERFEL, in his official capacity as Commissioner of Internal Revenue Service; DOES 1-X, <br><br> Defendant. | Case No.: 3:24-cv-00082 <br><br> **COMPLAINT** |

Plaintiff Carole S. Gauler, in her capacity as the Personal Representative of the Estate of Paul L. Klein, by and through counsel Patricia Halstead of Halstead Law Offices, hereby alleges and complaints against Defendants as follows.

## PARTIES

1. At all relevant times herein Carole S. Gauler is a resident of the State of Nevada and a duly authorized representative of the Estate of Paul L. Klein ("Ms. Gauler").

2. The Internal Revenue Service is a bureau of the Department of the Treasury and carries out the responsibilities of the Secretary of the Treasury under §7801 of the Internal Revenue Code.

3. Daniel Werfel is the Commissioner of the Internal Revenue Service.

4. Ms. Gauler does not know the true names and capacities of Does I-X and, therefore, sues these Defendants under fictitious names. Ms. Gauler reserves the right to amend this Complaint to allege their true names and capacities when ascertained.

**JURISDICTION AND VENUE**

5. The Court has jurisdiction pursuant to 26 U.S.C. § 7422(j)(1) and 28 U.S.C. § 1346. This is a civil action brought against the United States for the recovery of internal-revenue tax erroneously or illegally assessed or collected without authority and/or recovery is sought for excessive sums wrongfully collected under the internal-revenue laws;

6. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(2); 1391(c)(1); and 1391(e). Defendants are United States agencies and officer(s) sued in their official capacities.

**GENERAL ALLEGATIONS**

7. Ms. Gauler is the Personal Representative for the Estate of Paul L. Klein (the "Estate"). Ms. Gauler was so appointed by court order filed in the Second Judicial District Court in case number PR16-00371, on December 12, 2016.

8. As the Estate Personal Representative and on behalf of the Estate, Ms. Gauler engaged the services of Michael McGowan, CPA ("Mr. McGowan") to address any and all tax filings that the Estate was obligated to undertake, and which included a United States Estate (and Generation-Skipping Transfer) Tax Return, which was completed by Mr. McGowan on September 18, 2017 (the "Return"), and which Ms. Gauler mailed along with sums payable shortly thereafter to the Department of Treasury, Internal Revenue Service Center (the "IRS") as instructed by Mr. McGowan. This Return appears to have been processed by the IRS with no difficulty.

9. On March 4, 2020, the Governor of California, Gavin Newsom, proclaimed a state of emergency based upon Covid-19, and on March 19, 2020, Governor Newsom issued a stay-at-home order by and through Executive Order N-33-20.

10. On March 11, 2020, the World Health Organization declared Covid-19 a global pandemic and stay-at-home orders spread throughout the United States.

11. On March 30, 2020, Mr. McGowan completed an Amended United States Estate (and Generation-Skipping Transfer) Tax Return on behalf of the Estate (the "Amended Return"), which established that a refund is due to the Estate in the amount of $428,873 (the "Refund"). Mr. McGowan provided the same to Ms. Gauler by mail, and Ms. Gauler received it within days of its completion. Ms. Gauler then timely mailed it to the IRS along with a Form 8971.

12. Having timely submitted the Amended Return to the IRS in early April 2020 and not having received the Refund due to the Estate, Ms. Gauler followed up regularly with Mr. McGowan to see what the delay was, repeatedly surmising to him that the IRS must have lost the Amended Return given that she had mailed it to the IRS only days after its completion by Mr. McGowan.

13. Mr. McGowan commenced calling the IRS Estate and Gift Tax Section on September 17, 2020, and kept a call log evidencing the same.

14. Mr. McGowan was able to get through to the IRS Estate and Gift Tax Section on September 17, 2020, and documented his call in an email of the same date to Ms. Gauler by which he wrote, "I finally got through to the IRS estate & gift tax section. They don't show the supplemental return in their system yet, which they say is not surprising due to COVID 19 furloughs. Her best guess for a refund check is 3 to 5 months from now."

15. Based upon the time frame estimate for the Refund that Mr. McGowan was provided by the IRS when he called in September 2020, and because the Refund had not yet been received, Ms. Gauler emailed Mr. McGowan on February 19, 2021, inquiring if he thought the "IRS lost us."

16. Based upon Ms. Gauler's inquiry, Mr. McGowan commenced calling the IRS Estate and Gift Tax Section again on February 19, 2021, and made follow up calls on February 25, 2021, and March 2, 2021. Mr. McGowan was not able to get through to the IRS Estate and Gift Tax Section with any of those calls.

17. During the Covid-19 pandemic, taxpayers and tax preparers were cautioned numerous times not to refile returns as this would only further compound the severe backlog already faced by the IRS and would potentially cause further delay or processing complications.

18. Understanding that the IRS did not want returns to be refiled, on March 2, 2021, Mr. McGowan emailed Ms. Gauler and wrote, "I have called the IRS several times and have not been able to speak with anyone. The first time I was on hold for 2 hours and then recycled back to the main menu. Correspondence will not be timely answered either, I do not know what else to do. The IRS is not staffing their normal services."

19. On August 14, 2021, Ms. Gauler emailed Mr. McGowan again inquiring what could be done about the Refund and asking if it was possible that "the IRS lost it," in response to which, via an email of August 17, 2021, Mr. McGowan indicated that there is no further activity posted by the IRS in relation to the Amended Return; that he could not successfully get through to the IRS Estate and Gift Tax Section by telephone; that the time frame within which to file the Amended Return had since passed; that other returns he was working on from over a year prior had still not been processed; and that it was his belief that the IRS was simply far behind in their processing.

20. Mr. McGowan continued to attempt to reach the IRS Estate and Gift Tax Section and was able to eventually get through in August 2021, at which time he was informed that the Amended Return had not been received by the IRS. As a result, on August 23, 2021, Mr. McGowan reprocessed the Amended Return and mailed it to Ms. Gauler to refile with the IRS along with the correspondence that outlined how the Amended Return had initially been sent but was evidently misplaced or lost by the IRS during the disruptions caused by Covid-19.

21. On October 27, 2021, Mr. McGowan wrote to Ms. Gauler explaining that he had reprocessed the Amended Return and prepared an August 23, 2021, letter to the IRS requesting that the IRS grant reasonable cause for the late filing. Mr. McGowan provided Ms. Gauler the same who then resubmitted the Amended Return along with the August 23, 2021 letter drafted by Mr. McGowan to the IRS for processing.

22. Mr. McGowan made attempts to follow up on the resubmitted Amended Return that were unavailing. He again maintained a call log, which demonstrated calls were made in June and August of 2022.

23. No response from the IRS in relation to the second submission of the Amended Return was forthcoming until December 23, 2022, a year and two months after it was submitted. The response came in the form of a letter dated December 23, 2022, by which Brian Minnich, Operations Manager Centralized Specialty, indicated that the Refund would not be allowed because the Amended Return "was filed more than 3 years after you filed your tax return." No mention is made about the prior timely filing of the Amended Return and the refiling promulgated by the Covid-19 repercussions, nor is any mention made of Ms. Gauler's and Mr. McGowan's request to allow the late filing based upon reasonable cause.

24. It is well known and indisputable that the Covid-19 pandemic resulted in difficulties for the IRS and several reports emerged regarding the treatment of paper filings, backlogs, and other impacts of the Covid-19 pandemic and, in relation to such, reference was made in the August 23, 2021, correspondence by which Mr. McGowan had noted that the Return "was filed during the initial COVID pandemic chaos. Normal IRA [sic] processing operations were severely disrupted by COVID, and IRS employees were furloughed. Paper filed returns went unopened and/or unprocessed for many months. Hundreds of thousands of tax returns, correspondence and myriad other mailings were piled up, reportedly in trailers. It would be reasonable to expect that numerous unknown tax returns have been misplaced or lost during this period."

25. Given the known complication of the Covid-19 pandemic and the fact that the Amended Return had been timely submitted as explained, the IRS's position is perplexing. The Refund was validly sought, timely submitted, and the refusal to issue the Refund is unfair and results in an unwarranted windfall to the IRS of $428,873 that it is not in good conscience entitled to retain. The Refund amount properly belongs to the Estate and the IRS should not be permitted to take advantage of a logistical nightmare caused by an unprecedented pandemic to deny the Estate funds to which it is rightly entitled.

26. Based upon the foregoing, on May 11, 2023, Ms. Gauler sought assistance from the Taxpayer Advocate Service and concurrently sought to obtain the Refund via a Form 843 Claim for Refund and Request for Abatement (the "Claim Form"), which had been received by the IRS as confirmed by the Taxpayer Advocate Service. The Claim Form was sent certified mail through the U.S. Postal Service and was received by the IRS on May 16, 2023.

27. Although the initial rejection of the Refund by the IRS may be deemed a denial of the Refund, the Claim Form was sent in for the purpose of exhausting all administrative remedies and ensuring future court jurisdiction. See 26 U.S.C. § 7422(a).

28. To date, the IRS has not responded to the Refund request as submitted through the Claim Form, mandating the filing of this Complaint so as not to compromise the applicable statute of limitations.

29. Relevant to Ms. Gauler's claims as stated herein, by the IRS's own statistics, as of December 23, 2022, there were 1.91 million unprocessed individual returns, which included tax year 2021 returns and late filed prior year returns, of which 1.49 million required error correction or other special handling and of which 414,000 were paper returns waiting to be reviewed and processed. See IRS Operations During Covid-19: Mission-Critical Functions Continue as Updated on January 10, 2023. Those numbers fail to account for estate returns such as the one at issue and other matters submitted that were likewise subject to the backlog and the logistical difficulties that resulted from the

Covid-19 pandemic. Other publications addressing the Covid-19 pandemic backlog reported that as of May 1, 2021, the IRS had 8.8 million returns in its Error Resolution System; 15.8 million unprocessed 2019 and 2020 paper-filed returns; and 5.5 million returns with processing errors or suspected identity theft issues, rendering over 30 million returns requiring manual processing. *See* Spidell's Federal Taxletter, Volume 9.10 (October 2021). There was also the destruction of 30 million taxpayer documents as reported by the Treasury Inspector General for Tax Administration in May 2022 the effect of which led to several articles addressing concerns such as those now raised by the Estate. *See, e.g.*, Isabelle Marales' October 5, 2022, article for the Independent Women's Forum titled IRS Destroyed 30 Million Tax Documents and Refuses to Explain Why. This action by the IRS led to U.S. Senate inquiries; and, although the IRS attempted to justify its actions in a statement issued May 13, 2022, by claiming only information returns were destroyed, that can never actually be substantiated.

30. The fact of the matter is that Covid-19 had devastating effects and the IRS should be cognizant of the same and understanding of the consequences of such to taxpayers and, as relevant hereto, the Estate. This is particularly true when the IRS extended various tax filing and payment deadlines as a result of the Covid-19 pandemic but then inexplicably held the Estate to a deadline that had been met through the original filing but, despite explanation, the IRS would not grant a concession for reasonable cause as was warranted by the resubmission of the Estate's Amended Refund when the IRS was unable to locate the original Amended Return filing.

31. The difficulties brought on by the Covid-19 pandemic were unprecedented and the impacts of such were evident and clearly felt in the breakdown of IRS operations. As such, it is not surprising that the originally filed Amended Return was not processed for having gone missing in the chaos.

32. The Estate must not be made to suffer a loss of $428,873 for matters that were entirely out of its control, particularly where the sums are subject to a valid refund

and the Estate did not sit on its rights to claim the refund as evidenced by the Amended Return itself, which was completed on March 30, 2020.

33. It would be wholly unjust for the IRS to retain such funds when they are subject to an established refund. This is particularly true given that the delay was on the part of the IRS, which has now relied upon the same to severely prejudice the Estate and retain hundreds of thousands of dollars to which it is not entitled.

34. Retaining the refund despite it being validly owed and under the circumstances is also wholly contrary to the IRS's own Taxpayer Bill of Rights, which mandates that taxpayers not be obligated to pay more than the correct amount of tax owing and that taxpayers enjoy the right to a fair and just tax system.

## FIRST CAUSE OF ACTION

### Refund

35. Ms. Gauler restates allegations 1 through 34 as though fully set forth therein.

36. The Estate is validly entitled to the Refund. In addition to the factual allegations in support, Defendants are subject to equitable principles precluding denial of the same including, but not limited to, estoppel and unclean hands.

37. The Estate has been harmed as a result of the IRS's failure to issue the Refund and is entitled to damages accordingly including, but not limited to, recovery of the amounts subject to the Refund, lost interest, case costs, and attorney's fees.

## SECOND CAUSE OF ACTION

### Unauthorized Collection (26 U.S.C. § 7433)

38. Ms. Gauler restates paragraphs 1 through 37 as though fully set forth herein.

39. The IRS, by and through its authorized agent, Brian Minnich, Operations Manager Centralized Specialty, intentionally or recklessly disregarded the Estate's right to the Refund by, amongst other wrongdoing, ignoring the circumstances relevant to the request for the same and relying upon inefficiencies created by the IRS itself.

8

40. As a result of the IRS's conduct, by and through the actions of Brian Minnich, Operations Manager Centralized Specialty, the Estate has suffered harm and is entitled to damages including, but not limited to, recovery of the amounts subject to the Refund, direct economic damages sustained as a proximate result of the reckless or intentional actions of Brian Minnich, Operations Manager Centralized Specialty, plus case costs, and attorney's fees.

### THIRD CAUSE OF ACTION

### Violation of the Taxpayer Bill of Rights

41. Ms. Gauler restates paragraphs 1 through 40 as though fully set forth herein.

42. The IRS is bound by the Tax Payer Bill of Rights, which applies to all taxpayers in their dealings with the IRS. 26 U.S. Code § 7803(3)

43. Included in the Taxpayer Bill of Rights is the "right to pay only the amount of tax legally due."

44. The Taxpayer Bill of Rights further ensures that taxpayers have the right to "expect that the IRS will consider their timely objections and documentation promptly and fairly, and receive a response if the IRS does not agree with [the taxpayer's] position."

45. The Taxpayer Bill of Rights also ensures that taxpayers are entitled to "receive prompt, courteous, and professional assistance in their dealings with the IRS."

46. The Estate is a taxpayer who, amongst other violations of the Taxpayer Bill of Rights perpetrated by the IRS, has paid more than the amount of tax legally due by virtue of the IRS refusing the Refund; has not had a timely response to its Claim Form; and has not been treated fairly nor had its concerns addressed, which were ignored altogether by Brian Minnich, Operations Manager Centralized Specialty and not responded to whatsoever in relation to the Claim Form.

47. The Estate has been harmed as a result of the IRS's failure to abide by the Taxpayer Bill of Rights and is entitled to damages accordingly including, but not limited

to, recovery of the amounts subject to the Refund, lost interest, case costs, and attorney's fees.

### REQUEST FOR RELIEF

WHEREFORE, Ms. Gauler, in her capacity as Personal Representative of the Estate of Paul L. Klein, prays for judgment in favor of the Estate and against Defendants as follows:

1. For a full refund in the amount of $428,873;
2. For direct economic damages sustained including, but not limited to, lost interest;
3. For case costs and attorney's fees; and
4. For such other and further relief as this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff, Carole S. Gauler, as Personal Representative of the Estate of Paul L. Klein, pursuant to FRCP 38(b), demands a trial by jury for all issues so triable.

Dated this 15th day of February 2024.

Patricia Halstead, Esq.
Attorney for Carole S. Gauler, Personal Representative of the Estate of Paul L. Klein